IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN R. SEITZ, III, and | : | |
| HICKORY HILL GROUP, LLC, | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 16-4130 |
| | : | |
| EAST NOTTINGHAM TOWNSHIP et al., | : | |
| Defendants. | : | |

**MCHUGH, J.**                                                                                                     May 24, 2017

## MEMORANDUM

This case arises out of a dispute between a Chester County business owner and local government officials. Plaintiffs John R. Seitz, III, and Hickory Hill Group, LLC, allege that Defendants East Nottingham Township and various officers thereof deprived them of numerous constitutional rights by illegally seizing their private driveway and converting it into a public right-of-way, arbitrarily enforcing land-use and signage ordinances, and attempting to have Seitz arrested on false charges. Upon consideration of Defendants' Motions to Dismiss, I conclude that the only surviving claim is one for deprivation of substantive due process based on Defendants' alleged appropriation of Plaintiffs' driveway.

**I.    FACTS**

In February 2014, HHG[1] purchased a property located at 1041 Hickory Hill Road, East Nottingham Township, Chester County, Pennsylvania. The Amended Complaint does not include an extensive description of the property, but this much is clear: 1041 Hickory Hill Road is a

---
[1] HHG is a Delaware LLC; Seitz is its managing principal.

1

triangular parcel bounded by two public thoroughfares, Hickory Hill and Oxford Roads, and by the disputed roadway that is the focal point of this case. Viewed on a map, the disputed roadway would, if open to traffic, constitute a continuation of Fulton Road, an existing public right-of-way.

Plaintiffs contend that the roadway in dispute is a private driveway. They note that historical Township maps and surveys do not list the roadway as a public street and that the Township refused a request from Joseph Coates, the previous owner of the property, to maintain it as such. Plaintiffs further maintain that Coates blocked the northern entrance to the roadway when requested to do so by State Police in 2005 and that the roadway remained inaccessible to the public until 2014. According to Plaintiffs, when they acquired 1041 Hickory Hill Road in early 2014, they understood the roadway to be their private property, posted signs to that effect, maintained Coates's barrier, and used the area as a loading zone and storage area.[2]

Defendants—East Nottingham Township, the Township Board of Supervisors, and eight individually named Township officials—apparently had a different view. According to Plaintiffs, in July 2014, the Board of Supervisors met and, without first providing notice, voted to evict Plaintiffs from the roadway. In September, the Supervisors (again purportedly without notice to Plaintiffs) authorized spending for survey and engineering work necessary to convert the roadway into a county road. Plaintiffs claim that the survey was overseen by Defendant Winifred Moran Sebastian, Esq., the Township Solicitor, who authorized the use of "fabricate[d]" data and "unconventional methods" to portray the roadway as an extension of nearby Fulton Road. Am. Compl. ¶¶ 69–70. Plaintiffs further maintain that, in October 2014, Sebastian ordered Defendant William Weaver, the Township Road Master, to remove Plaintiffs' barricades and private property signs and occupy the roadway. With the roadway under township control, Weaver and Defendant Mark Deimler, the Township Engineer and Building Code Official, allegedly removed what had

---

[2] The 227-paragraph Amended Complaint does not disclose the nature of HHG's business activities on the property.

been a functioning drainage system and replaced it with a "negligent[ly]" designed "seepage pit/dry well," resulting in significant flood damage to the structures at 1041 Hickory Hill Road. ¶ 113.

Plaintiffs cite the Township's appropriation of their private driveway as the most glaring example of what they broadly characterize as a coordinated effort to "trample[] upon their constitutional rights." ¶ 137. In support of this theory, Plaintiffs allege that Defendant Pamela Scheese, the Township Zoning Officer, denied their building permit request and twice denied their application to post public signs, each time for "arbitrary and capricious reasons." ¶¶ 122, 134. In a similar vein, Plaintiffs maintain that Scheese and Deimler sent them notifications of non-existent zoning and building code violations. ¶¶ 147–53. Finally, Plaintiffs contend that Defendants Patricia Brady, Township Secretary, and Scott Blum, a former Township Supervisor, conspired with unnamed "cronies" in an attempt to have Seitz falsely arrested because he supported a rival candidate for an open seat on the Board of Supervisors. ¶¶ 161–64.

Before me now are two Motions to Dismiss pursuant to Rule 12(b)(6), one on behalf of Defendant Sebastian and one on behalf of the other nine Defendants.

## II.   STANDARD

A complaint is properly dismissed under Rule 12(b)(6) when it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a 12(b)(6) motion, the court must first separate the factual and legal elements of a claim, accepting as true all well-pleaded facts while disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. DISCUSSION

Plaintiffs seek relief under 42 U.S.C. § 1983. To prevail, they must show that Defendants "acted under the color of state law and denied [them] a federally protected constitutional or statutory right." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). Plaintiffs bring claims under a variety of constitutional theories: (1) due process and Seventh Amendment right-to-jury-trial claims related to the property at 1041 Hickory Hill Road; (2) a facial First Amendment challenge to the Township's signage ordinance; and (3) First Amendment and due process claims related to the alleged conspiracy to have Seitz arrested on false charges. I consider each group of claims in turn.

### A. Due Process and Seventh Amendment Claims Related to the Property at 1041 Hickory Hill Road

Plaintiffs allege that Defendants' interference with their property interests in 1041 Hickory Hill Road deprived them of their Fourteenth Amendment rights to substantive and procedural due process, and their Seventh Amendment right to civil trial by jury. Specifically, Plaintiffs claim that Defendants abridged these rights by: (1) "negligent[ly]" designing and installing a drainage system that resulted in flooding of, and structural damage to, Plaintiffs' real property; (2) denying Plaintiffs' request for building and sign permits and notifying Plaintiffs of zoning and building code violations; and (3) appropriating Plaintiffs' private driveway. Defendants raise three threshold objections. First, they argue that Plaintiffs lack Article III standing to bring claims based on these actions. Next, Defendant Sebastian claims that Plaintiffs have failed to state a claim against her because she did not act under color of state law within the meaning of § 1983. And finally, Defendants contend that Plaintiffs' claims are unripe.

The three requirements of Article III standing are (1) "an injury in fact" that is "concrete and particularized," (2) a "causal connection between the injury and the conduct complained of," and

(3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants seize on language in *Lujan*, which describes an injury in fact as an "invasion of a legally protected interest." *Id*. at 560. Armed only with this ambiguous phrase,[3] they attack Plaintiffs' standing to bring claims related to 1041 Hickory Hill Road, arguing that Plaintiffs do not own that property and therefore have no "legally protected property interest," the "invasion" of which would give rise to an injury in fact.

Defendants make a credible case that Plaintiffs lack valid legal title to 1041 Hickory Hill Road, but that argument goes to the merits, not to standing, and in any case is premature.[4] "In the context of a motion to dismiss . . . the injury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). Plaintiffs clearly carry that minimal burden by alleging that Defendants' appropriation of their driveway and denial of permits hindered their business activities and damaged their real property. These direct and immediate economic losses fit squarely within the recognized injury-in-fact categories and easily satisfy the first requirement of Article III standing. *See Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury-in-fact . . . . Indeed, it is often assumed without discussion."). So Defendants' standing argument fails.

---

[3] *See Judicial Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 363 (D.C. Cir. 2005) (Williams, J., concurring) (expressing "puzzlement" at the *Lujan* Court's description of injury in fact as "an invasion of a legally protected interest" and discussing possible interpretations of that phrase).

[4] Plaintiffs claim that their interest in 1041 Hickory Hill Road arose when that property was transferred by deed to HHG on February 19, 2014. Defendants point out that the records of the Delaware Secretary of State indicate that HHG was not in existence on the date of the alleged transfer and was not actually formed until September 13, 2016. Under Pennsylvania law a conveyance of real estate to a nonexistent entity has no legal effect, *Lester Assocs. v. Commonwealth*, 816 A.2d 394, 398–99 (Pa. Commw. Ct. 2003). Defendants therefore contend that Plaintiffs lack legal title to the subject property and thus have no property interest deserving of constitutional protection. Whatever weight this argument might ultimately have, at the motion to dismiss stage all factual allegations in the Amended Complaint must be taken as true. I therefore accept Plaintiffs' contention that they had a cognizable property interest in 1041 Hickory Hill Road; Defendants remain free to reassert their challenge at summary judgement.

Next, Defendant Sebastian, the Township Solicitor, argues that Plaintiffs have failed to state a § 1983 claim against her because she did not act under color of state law. A party acts under color of law when (1) she "exercise[s] . . . some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and (2) she "may fairly be said to be [a] state actor." *Angelico*, 184 F.3d at 277. Sebastian maintains that as a private attorney representing a municipal client, she was not a state actor within the meaning of § 1983. Generally, a state actor is one who "is a state official, . . . has acted together with or has obtained significant aid from state officials," or engages in conduct that is, "by its nature, chargeable to the state." *Id.* As Sebastian notes, courts in this Circuit have refused to label as "state actors" township solicitors who "render[] advice, draft[] correspondence . . . as to legal disputes, or otherwise engage[] in litigation and equivalent legal activities" on behalf of their government clients. *Belkowski v. Kruczek*, No. 209-CV-1549, 2010 WL 1433099, at *3 (W.D. Pa. Apr. 7, 2010). But courts have also found that these attorneys may become state actors when taking actions outside the scope of a traditional attorney-client relationship. *See id.* Such is the case here.

The Amended Complaint alleges that Sebastian deprived Plaintiffs of their rights to due process by supervising the creation of a survey to support the Township's claim of ownership over the disputed roadway, and by "personally direct[ing]" a Township employee to enter and seize Seitz's driveway. ¶¶ 67–75. Accepting these allegations as true, the complaint shows that Sebastian acted well outside the bounds of a traditional attorney-client relationship, adopting responsibilities akin to those of a city manager or engineer. I therefore find that she engaged in conduct that is, "by its nature, chargeable to the state," rendering her a state actor for purposes of Plaintiffs' § 1983 action.

In their final threshold challenge, Defendants urge that I dismiss on ripeness grounds Plaintiffs' due process claims based on the denial of signage and building permits, the application of zoning and building code ordinances, the appropriation of a private driveway, and the negligently designed drainage system. "The ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004). Because a ripeness challenge "concerns the justiciability of a claim," district courts "ordinarily" should "resolve [it] on a motion to dismiss rather than on a motion for summary judgment." *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 598 (3d Cir. 1998).

Of central relevance to the ripeness inquiry here is the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). There, the Court established a two-prong test for determining the ripeness of regulatory takings claims arising out of land-use disputes. Under the first prong of *Williamson County*, courts consider whether, before filing a takings claim, the aggrieved property owner appealed the government's adverse application of land-use regulations; if not, the government action at issue is not considered final and therefore is not ripe for challenge in federal court. The test's second prong imposes what amounts to an exhaustion requirement: before bringing a takings claim, the aggrieved property owner must first attempt to secure post-taking compensation through an inverse condemnation suit.[5]

---

[5] An inverse condemnation action is a suit "brought by a property owner for compensation from a governmental entity that has taken the owner's property without bringing formal condemnation proceedings." *Condemnation*, Black's Law Dictionary (10th ed. 2014).

7

In *Taylor Investment, Ltd. v. Upper Darby Township*, the Third Circuit extended *Williamson County*'s first prong beyond the regulatory takings context, holding that it "applies regardless of the theory on which plaintiffs attack a land-use decision—even where the attack is premised on substantive due process [or] procedural due process." 983 F.2d 1285, 1292 (3d Cir. 1993). Since *Taylor Investment*, our Court of Appeals has "consistently applied this finality rule" to dismiss due process claims based on adverse interpretations of land-use regulations where, as in *Williamson County*, the government decisions at issue had not first been appealed. *Lauderbaugh v. Hopewell Township*, 319 F.3d 568, 574 (3d Cir. 2003). In doing so, the Third Circuit has repeatedly noted its "reluctance to allow the courts to become super land-use boards of appeals" and has stressed that local authorities are "better position[ed] . . . to assess the burdens and benefits of th[e] varying interests" in land-use disputes. *Sameric*, 142 F.3d at 598.

*Williamson County* and *Taylor Investments* doom many of Plaintiffs' procedural and substantive due process claims. Under Pennsylvania's Uniform Construction Code, Plaintiffs were entitled to—but did not—challenge the denial of building permits and notification of building code violations. 34 Pa. Code § 403.122. Similarly, Plaintiffs did not appeal the denial of sign permits or notifications of zoning non-compliance, despite their right to bring these matters before the Township Zoning Board, a body vested with "exclusive jurisdiction to hear and render final adjudications" in challenges to determinations of a zoning officer. 53 Pa. Stat. and Cons. Stat. Ann. § 10909.1. Because Plaintiffs failed to challenge Defendants' adverse zoning, permitting, and building code decisions, those decisions are not considered final.[6] Due process claims based on those decisions are therefore unripe.

---

[6] Plaintiffs' contention that the denial of permitting applications and the notifications of zoning and building code noncompliance were arbitrary and capricious is immaterial. Plaintiffs' due process claims are based on Defendants' application of land-use laws and "the grant of a permit [or variance] would . . . reduce[] [Plaintiffs'] damages." *Sameric*, 142 F.3d at 598; *see also E & R Enter. LLC v. City of Rehoboth Beach*, 650 F. App'x 811, 815 (3d Cir. 2016).

The ripeness analysis differs for the due process claims that are based on Defendants' appropriation of Plaintiffs' driveway, and on the flood damage resulting from Defendants' negligently designed drainage system. Unlike the zoning and building code determinations discussed above, Defendants' damage to, and seizure of, Plaintiffs' private property are final government actions. *See Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 513 (2d Cir. 2014) ("[A] physical taking in itself satisfies the need to show finality."). Defendants nonetheless argue that the due process claims related to the driveway and drainage system should be dismissed as unripe under the second prong of the *Williamson County* ripeness test, which requires that parties first pursue an inverse condemnation suit before bringing takings claims in federal court.

Defendants' proposed application of *Williamson County* is contrary to the Third Circuit's decision in *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159 (3d Cir. 2006), where the court held that inverse condemnation actions have no bearing on the ripeness of substantive due process claims.[7] *County Concrete* concerned a facial challenge to a local zoning ordinance that was couched as both a takings claim and a substantive due process claim. *Id.* at 163. In analyzing ripeness, the court applied *Williamson County*'s second prong to bar the takings claim, while permitting the factually analogous substantive due process claim to proceed. *Id.* at 167–69. In so doing, the court stressed the "unique aspect" of takings claims:

> Because the Fifth Amendment bars not just the "taking" of property, but the taking of property "without just compensation," a plaintiff cannot claim a violation of the Just Compensation Clause until he or she has exhausted a state's procedure for

---

Under these circumstances, Plaintiffs' due process claims are unripe, notwithstanding Defendants' alleged lack of good faith.

[7] The Third Circuit's approach stands in contrast to that of the Second, Seventh, and Tenth Circuits. *See Kurtz*, 758 F.3d at 516 (applying *Williamson County*'s exhaustion requirement to due process claims "to prevent[] evasion of the ripeness test by artful pleading of a takings claim as a due process claim"); *Greenfield Mills, Inc. v. Macklin,* 361 F.3d 934, 961 (7th Cir. 2004) ("The *Williamson County* exhaustion requirement applies with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim."); *Rocky Mountain Materials & Asphalt, Inc. v. Bd. of Cty. Comm'rs*, 972 F.2d 309, 311 (10th Cir. 1992) (same).

9

seeking just compensation. Only then can a Takings claimant allege that he or she has actually been denied just compensation, and, thus, only then is his or her Takings claim ripe.

*Id*. at 168. In contrast to a takings claim, the court observed that "[t]he absence of 'just compensation' is not part of a due process . . . injury." *Id.* at 168–69. Because the second prong of *Williamson County* "only exists due to the special nature of the Just Compensation Clause," the court held that it was inapplicable to the plaintiff's substantive due process claim. *Id.* at 169. Thus, under *County Concrete*, where a property owner alleges a due process violation arising out of seizure or damage to property, an inverse condemnation action is not a prerequisite for asserting the constitutional claim.[8] Defendants' ripeness challenge to due process claims arising out of physical damage to, and seizure of, Plaintiffs' property must therefore be rejected.

Proceeding to the merits, I find that Plaintiffs' procedural and substantive due process claims based on the "negligent[ly]" designed drainage system fail because "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Plaintiffs' Seventh Amendment claim, based on denial of trial by jury, is similarly meritless because the Supreme Court has never held that the Fourteenth Amendment incorporates the right to a civil jury trial. *McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010).

Plaintiff's procedural and substantive due process claims based on the appropriation of the driveway require closer consideration. Focusing first on procedural due process, the Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a

---

[8] Defendants cite *Miles v. Township of Barnegat*, 343 F. App'x 841, 844 (3d Cir. 2009), without discussion. Putting to one side that opinion's lack of precedential value, the district court decision on appeal in *Miles* treated the complaint as alleging only takings and procedural due process claims. Even if I were to consider *Miles*, it would shed no light on the issue presented here.

person of liberty or property." *Zinermon*, 494 U.S. at 127. Here, Plaintiffs claim that their procedural due process rights were abridged when Defendants failed to provide them with notice and an opportunity to be heard before converting their private driveway into a county road. Whether this creates a cognizable constitutional claim depends in turn on whether Defendants were authorized to effect the alleged denial of pre-deprivation procedural safeguards.

In *Logan v. Zimmerman Brush Co.*, the Supreme Court found that a triable procedural due process claim existed where pre-deprivation notice and hearing were denied pursuant to an "established state procedure." 455 U.S. 420, 436 (1982). By contrast, the Court recognized in *Hudson v. Palmer* that "[w]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur," and any pre-deprivation protections will therefore be "impracticable." 468 U.S. 517, 532 (1984). Under those circumstances, the *Hudson* Court held that a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process. *Id.*[9]

Plaintiffs argue that *Logan*, not *Hudson*, controls in this case. I disagree. According to Plaintiffs, Defendants seized their driveway pursuant to Pennsylvania's Eminent Domain Code, 26 Pa. Stat. and Cons. Stat. Ann. §§ 301 *et seq.*, which allows the government to commandeer private land for public purposes. The Eminent Domain Code mandates pre-deprivation notice, hearings, and compensation, while also allowing aggrieved property owners to pursue post-deprivation

---

[9] The rule announced in *Hudson*, a refinement and extension of the Court's holding in *Parratt v. Taylor*, 451 U.S. 527 (1981), is commonly referred to as the *Parratt-Hudson* doctrine. In *Zinermon v. Burch*, the Supreme Court recognized an exception to the *Parratt-Hudson* doctrine, finding it inapplicable where a state actor wrongfully withheld due process safeguards, but did so while acting under "uncircumscribed power to effect the deprivation at issue." 494 U.S. at 136. In that scenario, the Court reasoned that the complained-of deprivation was neither unpredictable nor unauthorized. Neither party makes an argument concerning *Zinermon*'s application to Pennsylvania's Eminent Domain Code, but my review of that statute satisfies me that it does not grant state officials the sort of unfettered discretion that would require a departure from the *Parratt-Hudson* doctrine.

11

compensation through an inverse condemnation suit. With little elaboration, Plaintiffs claim that, under *Logan*, the code's inverse condemnation provisions are "established state procedure[s]" that effect the denial of pre-deprivation due process rights.

Plaintiffs' superficial invocation of *Logan* is unpersuasive. That case concerned the Illinois Fair Employment Practices Act (FEPA), which allowed individuals to bring discrimination claims by filing a complaint with the state's Fair Employment Practices Commission. Under FEPA, once a complaint was filed, the commission had 120 days to convene a "fact-finding conference"; only after this conference was the matter referred to a commissioner for an adversarial hearing. 455 U.S. at 424. After he was fired, Logan properly filed a FEPA complaint, but, for reasons beyond his control, the Commission failed to hold a fact-finding conference until five days after the expiration of the 120-day period. *Id.* at 426. When Logan's adversarial hearing commenced, his former employer successfully argued that the case should be dismissed based on the commission's failure to abide by the statutory time limits. *Id.* The issue before the Supreme Court was whether this dismissal violated Logan's procedural due process rights. In holding that it did, the Court stressed that Logan was "challenging not the Commission's error" but its enforcement of a provision of state law—the 120-day statutory period—that stripped him of his constitutional rights to procedural due process. *Id.* at 436.

The present case is clearly distinguishable. Inverse condemnation actions allow the state to cure what might otherwise be unconstitutional takings without just compensation. But unlike FEPA's 120-day time limit, the provisions of the Eminent Domain Code governing inverse condemnations do not, by operation, deny parties pre-deprivation procedural safeguards. If Plaintiffs were denied notice and an opportunity to be heard before their driveway was taken, it was because Defendants wrongly ignored the statutory commands of the Eminent Domain Code. Under

12

*Hudson*, such "random, unauthorized act[s]" cannot form the basis for a procedural due process claim.

Plaintiffs' substantive due process claim based on the seizure of their driveway stands on firmer ground. To prevail, Plaintiffs "must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." *Cty. Concrete Corp.*, 442 F.3d at 165. In land-use disputes like the one at issue here, the Third Circuit has held that government action violates substantive due process rights only when it "shocks the conscience," *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003), and has further held that such conscience-shocking behavior includes "virtual taking[s]," *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004). Thus, a substantive due process claim exists where "the facts asserted amount[] to a claim of an unconstitutional 'taking' without just compensation." *Id.* at 285. This is precisely what Plaintiffs have pled; I therefore find that they have stated a cognizable substantive due process claim.

The existence of an established, controlling principle of law defeats Defendants' assertion of qualified immunity from suit.[10] Taken in the light most favorable to Plaintiffs, the allegations in the Amended Complaint show that Defendants illegally seized Plaintiffs' real property without providing just compensation—a clear "virtual taking," as defined by the Third Circuit. A reasonable official with the power to make land-use decisions should know the contours of the law of substantive due process that courts in this circuit have been applying for over a decade.[11] Qualified immunity is therefore unavailable with respect to Plaintiffs' "virtual takings" claim.

---

[10] *See Reedy v. Evanson*, 615 F.3d 197, 224 (3d Cir. 2010) (Qualified immunity shields government officials from suit unless the right asserted "was clearly established in light of the specific context of the case.").

[11] Defendants' briefing of their qualified immunity defense is noteworthy for its silence regarding Plaintiffs' substantive due process claim arising from the seizure of the driveway. *See* MTD at 25–26. Because Defendants bear "[t]he burden

13

## B. First Amendment Claims Related to the Township's Signage Ordinance

Plaintiffs also bring what they describe as a facial First Amendment challenge to East Nottingham Township's signage ordinance, Township Code §§ 27-1801 *et seq.*[12] Section 1801 of that ordinance prohibits the display of outdoor signs without a permit but § 1802 exempts from this general rule directional or public service signs, signs advertising meeting times and places of nonprofit service, trespassing signs, and signs offering individual properties for rent (among other things). According to Plaintiffs, § 1803, the provision governing temporary signs, also "contains an express preference for a certain variety of religious signs—specifically exempting signs for the sale of Christmas trees from compliance." Am. Compl. ¶ 218. Plaintiffs argue that by regulating signage based on subject matter, §§ 1802 and 1803 impose presumptively unconstitutional content-based restrictions on speech. For the reasons below, I find that Plaintiffs lack standing to challenge § 1802, while their challenge to § 1803 fails as a matter of law.

Plaintiffs' standing to bring due process claims does not automatically confer standing to bring First Amendment claims. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("A plaintiff must demonstrate standing for each claim he seeks to press"). Similarly, standing to challenge one provision of an ordinance does not suffice to establish standing to challenge all provisions of that law. *Serv. Empl. Int'l Union, Local 3 v. Municipality of Mt. Lebanon* (*SEIU*), 446 F.3d 419, 424 (3d Cir. 2006). Rather, Plaintiffs must have Article III standing with respect to each provision of the signage ordinance that they believe is unconstitutional. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990) (considering petitioners' First Amendment challenges to some

---

of establishing entitlement to qualified immunity," *Reedy*, 615 F.3d at 223, their failure to address Plaintiffs' surviving claim weighs heavily against them.

[12] Although neither party provided the Court with a copy of the Township's signage ordinance, I am nevertheless free to examine that law since I "may properly look at public records . . . in addition to the allegations in the complaint," without converting a 12(b)(6) motion into a motion for summary judgment. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

provisions of zoning and licensing ordinances, but refusing to reach the merits with regards to other provisions of the same ordinances "because petitioners have failed to show they have standing to challenge them"), *modified on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). Stated differently, courts "are not free to hear a party's facial challenge to a municipal regulation that is wholly inapplicable to the party." *SEIU*, 446 F.3d at 424.

*SEIU* is particularly instructive. That case concerned a union's facial First Amendment challenge to a city ordinance that required organizations to obtain permits from local police before engaging in door-to-door "canvassing" or "soliciting." *Id.* at 421. The Third Circuit struck down the restrictions on canvassing but refused to reach the merits of the union's challenge to the provision on solicitation. *Id.* at 424–25. According to the court, the union never alleged that it desired or intended to solicit and was therefore "completely unaffected by the permitting requirement applicable to solicitors." *Id*. With no direct interest at stake, the court found that the union "lack[ed] constitutional standing" to bring a claim based on the ordinance's solicitation provisions. *Id*.

*SEIU* controls here. Plaintiffs do not allege that they were injured because they were prevented from, or punished for, displaying an exempt sign. Rather, their purported injury occurred when Defendants denied their application for a sign permit. Am. Compl. ¶¶ 126, 129, 133, 219–21. That denial cannot have been based on § 1802, a provision that delineates categories of exempt signs but says nothing about signs like Plaintiffs', which are subject to permitting requirements. Article III standing requires that an injury-in-fact be fairly traceable to the conduct complained of; *SEIU* makes plain that where, as here, a party is "completely unaffected" by a challenged provision, this causal connection is lacking. Accordingly, Plaintiffs' First Amendment challenge to § 1802 will be dismissed for lack of standing.

15

While § 1802 did not cause Plaintiffs' alleged injury, the Complaint does not disclose what provision of the ordinance did. Thus, although Plaintiffs do not allege that they sought a permit for a temporary sign under § 1803, they may have done so. Therefore, out of an abundance of caution, I will assume Plaintiffs have standing to challenge § 1803.

Plaintiffs' argument—that § 1803 violates the First Amendment because it confers special treatment for signs advertising Christmas trees—rests on a gross distortion of the ordinance's text. Far from stating "an express preference for a certain variety of religious signs," ¶ 218, the ordinance merely mentions "Christmas trees" in the context of a non-exhaustive list of frequently posted temporary signs. *See* § 1803 (referring to "[t]emporary signs, *including* . . . signs advertising the temporary sale of products and goods, *such as* Christmas trees") (emphases added). Moreover, the ordinance simply does not "exempt[] signs for the sale of Christmas trees from compliance." ¶ 218. Instead, § 1803 states that Christmas tree advertisements, like other temporary signs, "shall be permitted, provided that" they meet requirements related to time, place, and manner. The phrase "shall be permitted" does not mean "need not obtain permits," as Plaintiffs seem to suggest: § 1803 clearly states that "a permit *must be obtained* before erecting *any* temporary sign" (emphases added). "Shall be permitted" simply means temporary signs "shall receive permits" conditional on compliance with the content-neutral restrictions set forth elsewhere in the section—restrictions to which Plaintiffs voice no objections. In sum, Plaintiffs do not raise a colorable constitutional claim based on § 1803; their facial First Amendment challenge to the Township's signage ordinance will therefore be dismissed.

Although Plaintiffs style their First Amendment claim as a "facial challenge" to the Township's signage ordinance, their Amended Complaint can also be read as an as-applied challenge. Specifically, Plaintiffs claim that Defendant Scheese misapplied the ordinance by

16

"impos[ing] additional content-based restrictions upon Plaintiffs' sign permit requests—criteria over and above those content-based regulations *already* set for the in the Sign Ordinance." ¶ 223. To the extent these conclusory allegations can even be said to make out a colorable claim under *Towmbly* and *Iqbal*, they are subject to *Williamson County*'s finality requirement. *Shenkel United Church of Christ v. N. Coventry Township*, No. 09-1823, 2009 WL 3806769, at *3–5 (E.D. Pa. Nov. 13, 2009) (Surrick, J.). As noted above, it does not appear that Plaintiffs have exercised their right to appeal the denial of their sign permit. Nor have Plaintiffs alleged that Defendants' denial of their signage permit was accompanied by a fine, or some other adverse action, that would render that denial final notwithstanding Plaintiffs' failure to appeal it. *Cf. Peachlum v. City of York*, 333 F.3d 429, 437 (3d Cir. 2003) (as-applied First Amendment challenge was ripe when enforcement of signage ordinance required plaintiff to pay over $1,000 in fines). Assuming Plaintiffs' Amended Complaint encompasses an as-applied challenge, it is unripe.

### C. Claims Based on Conspiracy and Attempted Wrongful Arrest

Plaintiffs' last set of claims arise out of an alleged conspiracy between Defendants Brady, Blum, "and other unknown defendants and their cronies" to have Plaintiff Seitz arrested because he backed a rival candidate for an open seat on the Board of Supervisors. ¶ 161. According to Plaintiffs, these actions violated Seitz's rights to free speech and due process. These claims fail for at least three reasons.

Plaintiffs make only one factual allegation regarding the alleged conspiracy: that Defendant Brady falsely told a state police officer that Seitz attempted to bribe her. ¶ 163. Even accepting this allegation as true, Defendants point out that one need not be a government actor to report wrongdoing to law enforcement. Thus, the mere reporting of an alleged crime does not, by itself, show that Brady "abused a power or position granted by the state," *Bonenberger v. Plymouth*

*Township*, 132 F. 3d 20, 24 (3d Cir. 1997), and therefore does not support an inference that she acted under color of state law, as required under § 1983. Moreover, the Amended Complaint contains no facts to support the conclusory allegation that Brady, Blum and unnamed "cronies" acted in concert to deprive Seitz of his constitutional rights. Seitz's accusation of a conspiracy is therefore entitled to no weight under *Twombly* and *Iqbal*. Finally, by Plaintiffs' own account, Brady did not succeed in having Seitz arrested: "Corporal Cruz of the Pennsylvania State Police responded [to Brady's report] and determined the allegations to be without merit." ¶ 163. Since § 1983 "does not permit recovery for an attempt to deprive one of a constitutional right," *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 830 (E.D. Pa. 1998), *aff'd*, 165 F.3d 242 (3d Cir. 1999), Plaintiffs' claims must be dismissed to the extent they rest on a failed bid to deprive Seitz of his liberty.

## IV. CONCLUSION

Defendants' Motions to Dismiss will be granted as to all claims, except for the substantive due process claim based on the alleged appropriation of Plaintiffs' private driveway. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
